Frank GUYTON, Jr., Appellant,

v.

IRVING JENSEN COMPANY, Appellee,

and

Chubb Pacific Indemnity Co. and Iowa Industrial Commissioner, Respondents.

No. 84–514.

Supreme Court of Iowa.

Aug. 21, 1985.

Rehearing Denied Sept. 19, 1985.

Robert D. Fulton of Fulton, Frerichs, Martin and Andres, P.C., Waterloo, for appellant.

Jay P. Roberts and Jim D. DeKoster of Swisher & Cohrt, Waterloo, for appellee.

McCORMICK, Justice.

In this case of first impression we adopt the "odd-lot doctrine" in workers' compensation cases. The court of appeals reversed the district court's affirmance of the industrial commissioner's disability decision on the ground the evidence showed as a matter of law that petitioner was totally rather than partially disabled. We believe an issue of fact was presented on the extent of petitioner's industrial disability. Nevertheless we believe the commissioner erred in failing to apply the odd-lot doctrine in this case. Therefore we vacate the decision of the court of appeals, reverse the district court, and remand the case to the industrial commissioner for appropriate additional proceedings.

Petitioner Frank Guyton, Jr. began this action by filing a petition for review-reopening pursuant to Iowa Code section 85.-26(2) (1979). He hurt his back on May 5, 1978, while working for respondent Irving Jensen Company in Sioux City, when he was struck in the left hip by a cement truck. Workers' compensation benefits were paid during three months in 1978. In the review-reopening proceeding, he sought benefits for permanent disability, and the dispute concerns the extent of his compensable disability.

The industrial commissioner, acting through a deputy assigned to make the agency decision in accordance with Code section 86.3, determined Guyton's disability to be twenty percent. Upon Guyton's petition for judicial review, the district court affirmed the commissioner. When Guyton appealed to this court, we transferred the case to the court of appeals. That court reversed the district court after holding that Guyton proved total disability as a matter of law. We granted the employer's petition for further review.

Guyton raises essentially two questions in seeking to upset the commissioner's rul-

ing. He contends that the commissioner applied an incorrect rule of law in determining the extent of his industrial disability. He also contends that the commissioner erred in failing to find him totally disabled because the evidence compels such a finding as a matter of law.

I. *The applicable law.* The commissioner acknowledged that a worker's physical impairment is only one factor in determining the extent of the worker's industrial disability. He also acknowledged that the worker's inability to find suitable work after bona fide efforts to do so may demonstrate total disability. In his analysis of the evidence, however, the commissioner framed the standard differently. In relevant part he said:

> The question of disability remains the same for this claimant as for any other claimant: what does the evidence show that he can or cannot do? The evidence clearly shows what he cannot do due to his non-physical limitations, and the medical testimony shows that he indeed has some physical limitations which stem from the injury. However, the photographic evidence shows that his physical limitations are not so complete as to totally incapacitate him from work.

> There are some 90 pictures in the exhibits (some are duplicates) which are discussed in the testimony of the private investigator. These pictures and that testimony clearly establish that on the first three days of June, 1982, claimant was able to load a box springs and other miscellaneous items onto his pickup truck, drive it to a landfill, and dispose of the items there. Also, he was able single-handedly to lift a heavy roto tiller onto the pickup. He was observed doing this work, driving the pickup, and other normal activities. It is true that claimant obtained pain medication after doing this work, but it is also true that he apparently continued to do such work because, as of the week of the hearing, the private investigator found that claimant's vehicle was again loaded with "junk." From that fact, one takes the

inference that claimant continued his loading, hauling and unloading activities.

> The testimony and pictures show that claimant can do work which is within his capabilities for extended periods of time. That being the case, he cannot be said to be permanently and totally disabled.

In his findings of fact, the commissioner said:

> Although claimant has a permanent partial impairment to the body as a whole of 15 to 20 percent, he is able to perform such activities as loading light to moderately heavy items onto a pickup and is at times able to load an item as heavy as a roto tiller onto a pickup and is able to drive a pickup.

The commissioner also said:

> Claimant is disabled to the extent of 20 percent of the body as a whole because of the injury of [May 5, 1978].

In accordance with these findings, the commissioner awarded Guyton benefits based on a twenty percent industrial disability.

Thus the commissioner equated Guyton's ability to obtain employment with his ability to perform physical activity in "junking." In this context, Guyton's industrial disability was determined to be approximately the same as his fifteen to twenty percent functional disability. The availability of suitable employment was not discussed.

▬▬ The commissioner did not in his analysis address any of the other factors to be considered in determining industrial disability. Industrial disability means reduced earning capacity. Bodily impairment is merely one factor in gauging industrial disability. Other factors include the worker's age, intelligence, education, qualifications, experience, and the effect of the injury on the worker's ability to obtain suitable work. *See Doerfer Division of CCA v. Nicol,* 359 N.W.2d 428, 438 (Iowa 1984). When the combination of factors precludes the worker from obtaining regular employment to earn a living, the worker with only a partial functional disability has a total industrial disability. *See McSpadden v.*

*Big Ben Coal Co.*, 288 N.W.2d 181, 192 (Iowa 1980).

Abundant evidence concerning the other factors was adduced in this case. Guyton is a black man approximately 40 years old who does not know his age. He grew up in Mississippi where he had about one month of formal education. He cannot read or write or make change. The evidence included results of psychological tests administered for social security disability purposes. The tests showed Guyton to be mildly retarded. Considering his retardation with his lack of education and illiteracy, the examiner concluded Guyton "will be limited in competitive employment to jobs of an unskilled, repetitive nature requiring no literacy."

Guyton's employment history before his injury included work as a farm hand in Mississippi, fertilizer bagger in Waterloo, laborer in a Waterloo bottling plant for six years, city garbage man, and janitor at the Waterloo sewage plant. He was working as a laborer on highway construction when he was injured.

■ The uncontroverted medical evidence was that Guyton received a lower back sprain in the truck mishap, resulting in some percentage of permanent physical impairment due to recurrent pain. Substantial evidence supports the commissioner's finding that this impairment is fifteen to twenty percent of the body. Guyton's physician testified that he would have good days and bad days but could not do any job on a regular basis that involved bending, prolonged sitting, or even lifting as little as ten or fifteen pounds. He believed Guyton could not perform the work in the kind of jobs he previously had.

Testimony was received from a vocational counselor. Based on the medical and psychological data and her study of the job market, she said that before his injury Guyton could expect to obtain elemental employment in the bottom ten percent of the job market. After his injury she did not believe he could even obtain jobs of that type. She said Guyton might find work in a sheltered workshop that would

pay approximately $1430 a year. In a normal economic climate, she believed most employers would eliminate him as a job applicant. If he were hired, she thought he would be put in a "last hired, first fired" category. His physical and mental limitations would combine to screen him out of job opportunities. She concluded that Guyton had "little, if any, possibility of job placement in substantial gainful activity." As a result, she said she considered him to be 100 percent vocationally disabled.

The record contains substantial evidence of Guyton's efforts since his injury to find employment. He applied for work with the assistance of a friend at numerous places in the Waterloo area and up to 150 miles away. He had not found employment in this period of more than four years. He subsisted by earning small amounts through his junking activities and through social security disability compensation. There was no evidence that jobs were available to persons with his combination of impairments.

■ The question is more than the one posed by the commissioner concerning what the evidence shows Guyton "can or cannot do." The question is the extent to which the injury reduced Guyton's earning capacity. This inquiry cannot be answered merely by exploring the limitations on his ability to perform physical activity associated with employment. It requires consideration of all of the factors that bear on his actual employability. *See New Orleans (Gulfwide) Stevadores v. Turner*, 661 F.2d 1031, 1042 (5th Cir.1981) (are there jobs in the community that the worker can do for which he could realistically compete?). Although the commissioner correctly identified the issue as one of industrial disability, he did not apply that concept in all of its essential aspects to the evidence in this case. We conclude that he misapplied the law. *See* Iowa Code § 17A.19(8)(e).

■ In determining the correct rule of law to be applied to this record we must address Guyton's contention that Iowa recognizes the "odd-lot doctrine." He argued

this contention before the commissioner and in district court. The commissioner believed that doctrine is implicit in the industrial disability standard enunciated in our cases, and we agree. We now formally adopt the doctrine.

■ Under that doctrine a worker becomes an odd-lot employee when an injury makes the worker incapable of obtaining employment in any well-known branch of the labor market. An odd-lot worker is thus totally disabled if the only services the worker can perform are "so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist...." *Lee v. Minneapolis Street Railway Co.*, 230 Minn. 315, 320, 41 N.W.2d 433, 436 (1950). A person who has no reasonable prospect of steady employment has no material earning capacity. *Id.* at 320, 41 N.W.2d at 436–37. This concept was recognized in *McSpadden*, 288 N.W.2d at 192 ("a claimant's inability to find other suitable work after making bona fide efforts to find such work may indicate that relief should be granted"). It is recognized in virtually every jurisdiction. *See* 2 A. Larson, *The Law of [Workers'] Compensation*, § 57.51 at 10–164.24 (1983). The evidence in the present case would permit the finder of fact to find Guyton is an odd-lot employee.

■ In most jurisdictions, the odd-lot doctrine involves an allocation of the burden of production of evidence that has not been addressed in our prior cases. Professor Larson states the general rule as follows:

A suggested general-purpose principle on burden of proof in this class of cases would run as follows: If the evidence of degree of obvious physical impairment, coupled with other facts such as claimant's mental capacity, education, training, or age, places claimant *prima facie* in the odd-lot category, the burden should be on the employer to show that some kind of suitable work is regularly and continously available to the claimant. Certainly in such a case it should not be enough to show that claimant is physical-ly capable of performing light work, and then round out the case for non-compensability by adding a presumption that light work is available. It is a well-known fact of modern economic life that the demand for unskilled and semiskilled labor has been rapidly declining with the advent of the age of mechanization and automation, and that the great bulk of the persistent hard-core unemployment of the United States is in these categories.

2 A. Larson, *supra*, at 10–164.95 to 10–164.113. Our cases make it clear that the burden of persuasion on the issue of industrial disability always remains with the worker. *See Doerfer Division of CCA*, 359 N.W.2d at 438. The cases, however, have distinguished between burden of persuasion and burden of production in other workers' compensation situations. *See, e.g., McDowell v. Town of Clarksville*, 241 N.W.2d 904, 907 (Iowa 1976); *Nelson v. Cities Service Oil Co.*, 259 Iowa 1209, 1214–15, 146 N.W.2d 261, 263–64 (1966). Before today we were not required to decide whether a presumption exists that suitable work is available to an odd-lot employee or whether evidence must be adduced on that subject.

We adopt the burden of proof allocation enunciated in Professor Larson's statement of the general rule. We emphasize that this rule merely allocates the burden of production of evidence. It is triggered only when the worker makes a prima facie case for inclusion in the odd-lot category:

It is normally incumbent upon an injured [worker], at a hearing to determine loss of earning capacity, to demonstrate a reasonable effort to secure employment in the area of ... residence. Where testimony discloses that a reasonable effort was made, the burden of going forward with evidence to show the availability of suitable employment is on the employer and carrier.

*Employers Mutual Life Ins. Co. v. Industrial Commission*, 25 Ariz.App. 117, 119, 541 P.2d 580, 582 (1975). The evidence allocation is justified on the ground that

the employer ordinarily is in a better position than the worker to determine whether the labor market offers opportunities to persons in the odd-lot category. *See Ham v. Chrysler Corp.*, 231 A.2d 258, 262 (Del. 1967). The overriding reason for requiring evidence of employment opportunities is because there is no presumption that merely because the worker is physically able to do certain work such work is available. *See Niles Police Dept. v. Industrial Commission*, 83 Ill.2d 528, 534–35, 48 Ill.Dec. 212, 216, 416 N.E.2d 243, 246 (1981).

■ We therefore hold that when a worker makes a prima facie case of total disability by producing substantial evidence that the worker is not employable in the competitive labor market, the burden to produce evidence of suitable employment shifts to the employer. If the employer fails to produce such evidence and the trier of fact finds the worker does fall in the odd-lot category, the worker is entitled to a finding of total disability.

■ II. *The evidence in this case.* The court of appeals, without using the burden-shifting aspect of the odd-lot employee doctrine, nevertheless found Guyton carried his burden to prove total disability as a matter of law. We do not agree. Even under the odd-lot doctrine that we adopt today the trier of fact is free to determine the weight and credibility of the evidence in determining whether the worker's burden of persuasion has been carried. Only in an exceptional case would evidence be sufficiently strong to compel a finding of total disability as a matter of law. The evidence in the present case is not that strong. As demonstrated in the analysis of the commissioner, a dispute existed in the evidence concerning the effect of Guyton's injury on his ability to hold and keep a job. Although Guyton clearly made a prima facie case that he is totally disabled, the evidence was not strong enough to compel that holding as a matter of law. The evidence would permit a finding that his inability to obtain employment was attributable to unsatisfactory work history unrelated to his injury.

Upon remand, in view of the burden-shifting aspect of the odd-lot doctrine we adopt today, the commissioner shall give the parties an opportunity to offer such additional evidence as they wish on the issue of availability of suitable employment for Guyton. The commissioner shall make new findings of fact and conclusions of law in accordance with today's holding.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED AND REMANDED.

All Justices concur except WOLLE, J., who takes no part.